MADDOX, Justice.
These appeals arise from a petition by the executor of the W.T. Williams estate for a final settlement of the estate. Several of the legatees contested the settlement, claiming that they had not received the amounts they were due under the will. The trial court ruled in the executor’s favor, and the legatees appealed. The executor filed a cross-appeal, contending that the trial court erred by denying his request for compensation. After a hearing on the petition, the trial court entered the following order:
“This matter was heard on January 15, 1985, and on January 21, 1985, on the executor’s petition for final settlement and the objections filed by certain legatees to the accounting of the executor.
“The estates of the deceased legatees Ophelia Williams Bonds, Oral Williams, Hershal Williams and Grady Williams were represented by an administrator ad litem Honorable Hobson Manasco, Jr.; who is a practicing attorney.
“The decedent, W.T. Williams died in May 1941 and his will and testament was admitted to probate by the Probate Court of Winston County, Alabama in June 1941. L.B. Williams was named the executor in the will and he qualified as executor and acted as executor of said estate. The decedent was also survived by his widow, M.O. Williams. L.B. Williams, the executor, was also a son of the decedent and was a beneficiary of a specific bequest in the will and was also a beneficiary of the residuary estate of the decedent.
“During the life of the widow or until she remarried the executor was given the authority to sell all of the real estate owned by the decedent except that specifically devised in the will.
“The will directed the executor as follows:
“ ‘[M]y executor hereinafter named shall pay out of any money left by me or coming into his possession from said estate whatever amount in his judgment is *896 necessary for the support and care of my wife during her life or until she remarries. ...’
“The widow of the decedent died on July 11, 1950.
“It appears that all the real estate owned by the decedent at the time of his death and not specifically devised had been sold by the executor at the time the widow died in 1950 except the farm where the widow was residing at the time of her death.
“In 1951 one of the legatees filed a petition to remove the estate from the Probate Court of Winston County, Alabama, to this court. An order was entered on April 12,
1951, removing the estate to this court. Thereafter a petition was filed herein by two of the legatees (Grady Williams and Hershal Williams) against L.B. Williams as executor. A hearing was set on the petition and subpoenas were issued to L.B. Williams and to at least two banking institutions seeking all of the financial records of the estate of the decedent. A decree was entered by this court on November 4,
1952, denying the petitioners any relief. There this matter rested until 1983 when the legatee Dura Williams McGuire filed a civil action in the United States District Court for the Northern District of Alabama seeking an accounting from L.B. Williams.
“The legatee, Dura Williams, was bom in September 1940 and became twenty-one years of age in September 1961. The mother of Dura Williams was appointed as her guardian by a court in the State of Oklahoma in 1952. The guardianship was closed by the consent of Dura Williams in 1959. The last receipt of any monies by the guardian is shown to have been in 1957. The court finds that this amount of money shown as received by the guardian in 1957 was received by the guardian from the executor, L.B. Williams, and was the last payment the executor made to the legatee Dura Williams or to any other legatee or beneficiary named in the will of the decedent.
“From at least 1957 until 1983 no legatee including Dura Williams McGuire made any type demand upon the executor, L.B. Williams, for an accounting of the estate. No legatee during that period sought to invoke any provision of the law to compel an accounting by L.B. Williams. No questions were asked of L.B. Williams in regard to the estate during that period of time and he apparently gave no information about the estate.
“It would appear to the court that the facts and circumstances of this case give rise to a situation as stated in Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201 (1912) where ‘there must be a time beyond which human transactions will not be inquired into....’
“In the hearing which was conducted over thirty years ago by the court on the petition of two of the legatees certain issues had to be decided by the court then which have to have a bearing or should bind the court’s decision now. The payments of monies which the executor provided for the widow of the deceased during her life had to be issues which the court in 1952 heard and decided. The financial records of the estate were subpoenaed and were subsequently lost or misplaced and after this long period of time cannot be reconstructed in exact form. There is no dispute in the evidence but that the widow of the deceased had no funds to provide for her necessities of life except those paid or furnished to her from the estate of the decedent. The evidence reveals that the widow was a mother and grandmother who shared what she had with her children and grandchildren who were also legatees of the estate of the decedent. The legatee Dura Williams McGuire and her mother lived with the widow for several years and were furnished during that time many of the necessities of life by the widow of the decedent.
“Had the legatees-contestants not slept on their rights for over twenty years a reconstruction of the financial records of the estate may not have been impossible; however, this long delay has severely prejudiced the executor. Not only are all his financial records gone but his memory has faded with the long lapse of time. The *897 Judge who heard the complaint in 1952 is dead, the then register is dead, both legatees who filed the complaint are dead, the lawyer who represented the executor is dead and needless to say everyone who is not dead is over thirty years older.
“The facts and circumstances of this matter [make] one of the best examples this court has ever seen whereby all the parties having an interest in the estate have been to some extent at fault. The type of fault of the parties has been of such a nature that it makes it difficult for the court to arrive at an exact mathematical disposition of the controversy surrounding the administration of this estate. Due to the lapse of time which the parties to the proceedings have let expire without protecting their rights the court will attempt to accord equity to the parties hereto.
“The court is of the opinion from the circumstances surrounding this cause there could never be a clearer case where repose should be invoked thereby declaring this matter closed and terminated forever. However due to the balancing of the equities of the parties the court hesitates to apply repose in its entirety to this matter. If the court invoked repose and if for some reason it was later decided repose was not proper more time would have lapsed which would only further obscure memory and further preclude the possible attainment of justice and truth in regard to the affairs of this estate.
“The court finds as follows:
“(a) That the executor did not use any of the assets of the estate for his own use.
“(b) That the legatees who were devised specific property or monies have received those properties.
“(c) That the legatees who were devised specific property or monies have received their full share of the residuary estate to which they were entitled except that amount hereinafter set forth.
“(d) That to the extent possible the executor collected the rents from the properties of the estate and properly invested monies of the estate coming into his hands. That all the legatees received the benefits of the services of the executor in managing the affairs of the estate and the actions of several of the legatees were a constant source of trouble to the executor. The court is of the opinion that the evidence that one or more of the male members of this large family were killed by law enforcement officials is an indication that the managing of the estate of the decedent was not conducted in a harmonious atmosphere but was conducted in a constant sense of bitterness and accusations.
“(e) That the executor was also a beneficiary of the proceeds of the properties of the estate which he sold as executor. That the properties of the estate which the executor sold were sold at their then fair market value. The executor other than his Vio share as provided for in the will received no personal gain from the sale of the properties. That other than providing for the needs of the widow from the sales proceeds of the properties the executor has paid the proceeds of the various sales to the legatees.
“The introduction into evidence by the contestants of a deed dated February 25, 1952, from the executor L.B. Williams to himself of the property referred to in testimony as being the farm where L.B. Williams presently resides is somewhat confusing. L.B. Williams had prior to the execution of that deed acquired all the interest of the legatees named in the will except the interest of the minor legatee, Dura Wiliams — now Dura Wililams McGuire. The first deed executed by the legatees is dated October 11, 1950. Then a later quitclaim deed was executed by the same legatees on January 18, 1951. The interest of the legatee Dura Williams McGuire was acquired in a proceeding conducted in this court in case number 356. The final decree in that cause was entered on July 16, 1952, and it permitted L.B. Williams to acquire the interest of Dura Wiliams McGuire upon the payment of $1750.00 to the Register of this Court. From the evidence the guardian of Dura Williams McGuire received the $1750.00. *898 Due to the conveyance by the executor of property of the estate to himself the court deems it necessary to pass upon the fairness of the consideration paid to ascertain if the executor should be surcharged.
“There was no evidence presented that the value of the subject property was worth more than $35,000.00 in 1952. There was evidence presented that the subject property was worth $35,000.00 in 1952 and in fact the legatees other than Dura Williams McGuire all sold their interests in the property based upon a value of $35,000.00. From the execution of the deed it appears that all of those legatees were over the age of twenty-one and executed the deed of their own free will. From the evidence the feelings of some of the legatees who executed the deed to the property were not in a state of mind to make a gift to L.B. Williams. In fact the feeling of one or more of the legatees toward L.B. Williams was very hostile to put it mildly.
“The Court finds that the consideration of $35,000.00 for the subject property was a fair and adequate price in 1952 and all the legatees received their share of the $35,000.00, including the legatee, Dura Williams McGuire.
“As set forth in the petition filed herein a small parcel of real estate has apparently reverted to the estate of W.T. Williams due to the property being abandoned for the use as a public school. In order to settle all matters which could in any way relate to this estate the executor is authorized and directed to sell that parcel of real estate at what price he considers a fair price and the executor is authorized to pay any reasonable expenses connected with the sale from the proceeds of the sale.
“The Register of the Court shall give notice of the sale to the attorney for the legatees, Carleton P. Ketcham, Jr., and to the administrator ad litem, Hobson Manas-co, Jr., who shall have ten (10) days from the date of said notice to file objections.
“The Court finds that the executor has not been paid any compensation for serving as executor. The Court deems it somewhat unfair not to allow the executor any compensation for his services; however, as stated above, it is only by the balancing of the various equities and inequities of the parties that this matter can be finally concluded. The Court finds that the executor is entitled to a substantial executor’s fee; however, the Court declines to award the fee in view of the totalities of the equities arising from the administration and winding up of this long dormant estate.
“The Court finds that the expenditure of $57.62 from the funds of the estate to reimburse a sister for the expense of a grave marker or tombstone was not a proper charge against the estate. The executor is ordered to reimburse the estate account with said sum.
“The Court finds that $1250.00 is a fair and proper fee to award to the administrator ad litem appointed by the Court to represent the interests of the deceased legatees. The executor is ordered and directed to pay Honorable Hobson Manasco, Jr., the administrator ad litem, $1250.00 from the funds of the estate.
“After the sale of the aforesaid real estate and paying of the fee to the administrator ad litem, the executor is directed to pay and distribute the balance of the funds in his possession as follows:
“Vio to Lizzie Williams Robinson
"Vio to Wilena Williams Little
“⅛> to I.V. Williams Sutherland
“Vio to Christeen Reed
“Vio to L.B. Williams
“V20 to Dura Williams McGuire
“¾⅛ to Freda Burdick Robinson
“Vio to the Register of this Court for the estate of Ophelia Williams Bonds, deceased
“Vio to the Register of this Court for the estate of Oral Williams, deceased
“V10 to the Register of this Court for the estate of Hershal Williams, deceased
“Vio to the Register of this Court for the estate of Grady Williams, deceased
“It is further ordered that each party to this proceeding shall bear his or her own court cost.
*899 “It is hereby ORDERED, ADJUDGED AND DECREED that after the executor, L.B. Williams, has made the foregoing distributions he shall stand discharged as executor in this cause and this matter shall thereby be concluded.”
We begin our discussion of this case by noting that the trial court heard the evidence without a jury; thus, our review is governed by the ore tenus rule and every presumption will be indulged in favor of the trial court, and its findings will not be disturbed unless palpably wrong. Aird v. Thomas, 408 So.2d 500 (Ala.1981); Smith v. McNaughton, 378 So.2d 703 (Ala.1979). We feel that there is sufficient evidence to support the trial court’s determination, and we affirm.
I
The legatees first contend that the executor’s testimony reveals that the estate was worth a minimum of $115,238.50. Therefore, the legatees contend, each child of W.T. Williams was entitled to receive at least $11,524.00 as his share of the residuary estate. They contend that each of the deceased’s two grandchildren was entitled to $5,762.00 from the residuary estate. This was in addition to specific bequests which were made in the will.
However, while L.B. Williams did testify that he sold the property in the estate for a minimum of $115,238.50, his first duty as executor of the estate was to care for W.T. Williams’s widow during her life. The evidence shows that M.O. Williams had no separate estate and very little income other than what was paid to her from the estate. In addition to his simply paying money to her, the will required the executor to maintain the farm for her. Testimony showed that soon after W.T. Williams died, the farmhouse where he and M.O. Williams had lived became infested with termites, which required that L.B. Williams use estate funds to build a new home for his mother. It is, therefore, undeniable that some portion of the estate funds which came from the sale of estate property was used to support the decedent’s widow. How much of the estate was expended was a question for the trial court to resolve. This duty was rendered especially difficult here due to the lapse of time. Over thirty years have passed since the death of W.T. Williams’s widow, and the estate records, as the trial court found, have been lost. In light of the evidence before the trial court, we are unable to find that its holding that the legatees were paid their fair share of the estate is plainly and palpably wrong; therefore, this part of the order is due to be affirmed.
II
The legatees next contend that the trial court erred by holding that L.B. Williams did not violate his fiduciary duty to them when he purchased part of the estate property himself for $35,000. The trial court determined that $35,000 was a fair price for the land in 1952, when L.B. Williams purchased it; therefore, his purchase was not a violation of his fiduciary duty.
The evidence shows that, in 1951, all of the legatees except one executed a deed to L.B. Williams, selling their interests in the property to him. Later, these same legatees executed a quitclaim deed to L.B. Williams which apparently corrected the description of the property.
The sole legatee who did not sign the deed was Dura Williams McGuire, who was a minor at the time the deeds were executed. L.B. Williams commenced legal proceedings in 1952 to acquire her interest in the property. The court in that proceeding determined that L.B. Williams could acquire the property upon paying $1,750.00 to the register of the Winston County Circuit Court. Evidence was presented which showed that Dura Williams McGuire’s guardian received this money from the court on behalf of the minor child.
Dura Williams McGuire became 21 years old in September 1961. Thus, some 22 years elapsed after she came of age before she claimed that L.B. Williams had violated his fiduciary duty to her by acquiring her interest. There was no evidence presented *900 to explain this delay. In McCraw v. Cooper, 218 Ala. 186, 118 So. 333 (1928), a case involving an administrator’s purchase of estate property in which he held an interest, this Court held:
“ ‘Long acquiescence in the purchase’ —in this case acquiescence for 14 years after appellant came of age — ‘of which no just and reasonable explanation is offered, disables the cestuis que trust from coming into a court of equity to avoid the sale, or to assert that it was in trust for their benefit. * * * Unexplained acquiescence is a waiver of the right. * * * He must show how and when he first came to a knowledge of the facts.’” 218 Ala. at 189, 118 So. at 336.
Therefore, it appears that all the legatees acquiesced in L.B. Williams’s purchase of the property, and the court’s determination against Dura Williams McGuire’s claim is without error; therefore, the judgment of the trial court is due to be affirmed on this issue as well.
III
Finally, the legatees contend that the trial court erred by applying the doctrine of repose in this case. Although the trial judge did determine that the lapse of time did affect the resolution of the case, we find that he addressed the merits of the petition. Even if the trial judge did determine that repose should bar the legatee’s claim, which we do not decide, any error would have been harmless error. Rule 45, Ala.R.App.P.
IV
As to L.B. Williams’s cross-appeal, we note that, generally, the decision of whether to allow an executor compensation for his duties is largely in the discretion of the trial court. Armstrong v. Alabama Nat’l Bank, 404 So.2d 675 (Ala.1981). Here, the trial court determined that L.B. Williams was partially at fault. In addition, we point out that he has waited over 30 years to claim that he is due compensation for his actions as executor. In light of these facts, we cannot say that the trial court abused its discretion in this matter.
From the foregoing discussion, it is clear that the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.